**Commonwealth v. Fisher**

2

*Cynthia Dyrda-Hatton, assistant district attorney,* for Commonwealth.
*Michael P. Gough,* for defendant.

NANOVIC, *P.J.,* March 24, 2009—

## PROCEDURAL AND FACTUAL BACKGROUND

On September 16, 2005, at the conclusion of a two-day jury trial, the defendant, Ralph W. Fisher, was convicted of possession of a controlled substance (four counts),[1] possession with intent to deliver a controlled substance (four counts),[2] unlawful delivery of a controlled sub-

---

1. 35 P.S. §780-113(a)(16).
2. 35 P.S. §780-113(a)(30).

stance (four counts),[3] and possession of drug paraphernalia (four counts)[4] with respect to the sale of marijuana on four separate occasions to Jason Shiffert, a confidential informant. The four transactions occurred on January 2, 8 and 30 of 2004, and February 5, 2004. Each was witnessed by Officer Brian Biechy of the Lehighton Borough Police Department. The first two purchases were made by Shiffert from defendant and his co-defendant, Frederick Theesfeld III. The third and fourth purchases involved defendant and Shiffert only. With respect to the first two purchases, defendant was also charged and convicted of criminal conspiracy (two counts).[5]

At trial, Shiffert, Theesfeld and Biechy testified on behalf of the Commonwealth. Each described defendant's involvement in the sale and delivery of marijuana to Shiffert. In each case, the marijuana was contained within a clear plastic baggie handed to Shiffert. To assure against any chicanery by Shiffert, prior to each purchase the police met with Shiffert at police headquarters, directed him to undress to his underwear, and patted him down. Each time the police provided Shiffert with the money for the controlled buy; drove him to within a block of where the transaction was to occur—outdoors, on the sidewalk, in front of his mother's home; watched as he walked to the designated location where the purchase was to occur; and parked across the street where they waited and remained until the transaction was completed and Shiffert transferred to their custody the marijuana he had purchased from defendant. In short,

3. 35 P.S. §780-113(a)(30).
4. 35 P.S. §780-113(a)(32).
5. 18 Pa.C.S. §903(a)(1).

Shiffert was under constant police surveillance from the time he entered the police station until the time he provided the police with the drugs purchased.

Defendant took the stand on his own behalf and denied giving or participating in any drug-related activity. Defendant denied delivering any packages of any type to Shiffert. Instead, defendant testified that on one occasion he picked up a package from Shiffert for Theesfeld which he believed contained jewelry. Defendant also denied receiving any money from Shiffert. To the contrary, the only exchange of money which defendant acknowledged was money he paid to Shiffert in repayment of a loan he had received from Shiffert's girlfriend. In rebuttal, the Commonwealth presented evidence of defendant's prior conviction of receiving stolen property in 2001, a crimen falsi offense.

Following his convictions, defendant was sentenced on January 23, 2006, to an aggregate state sentence in a state correctional facility of no less than two- nor more than four-years imprisonment. These sentences were affirmed on direct appeal by the Superior Court; defendant's request for discretionary review before the Pennsylvania Supreme Court was denied on May 8, 2007. Defendant filed a pro se petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§9541-9546, on May 7, 2008, whereupon we appointed counsel to represent defendant. Thereafter, the amended petition which is now before us for disposition was filed. An evidentiary hearing was held on October 6, 2008.

The sole basis of defendant's claim for collateral relief which defendant has elected to pursue is that of the alleged ineffectiveness of his trial counsel, Brian Gazo,

Esquire. (Letter memorandum, p. 2.) Specifically, defendant contends that trial counsel failed to adequately investigate and present evidence as to Shiffert's involuntary commitment to a mental health institution, use of prescriptive medication, and affliction with a seizure disorder and that, had he done so, the testimony of Shiffert would have been substantially discredited. Defendant further claims that Shiffert has difficulty understanding information communicated to him, and had this been investigated further by trial counsel, Shiffert would have been determined to be incompetent as a witness.

## DISCUSSION

Ineffectiveness of trial counsel as a basis for collateral relief requires a defendant to plead and prove by a preponderance of the evidence that his conviction or sentence was caused by inadequate representation. In finding that counsel's representation was deficient, three elements must be shown: (1) that the underlying claim is of arguable merit, (2) that no reasonable basis existed for counsel's action or inaction, and (3) that there is a reasonable probability the outcome of the proceedings would have been different but for counsel's failures. See *Commonwealth v. Pierce,* 515 Pa. 153, 157-58, 527 A.2d 973, 974-75 (1987). A failure to satisfy any prong of this test requires rejection of the claim of ineffectiveness. See *Commonwealth v. Daniels,* 600 Pa. 1, 17, 963 A.2d 409, 419 (2009).

While counsel's failure to interview witnesses or gather information which could be helpful to the defense and of which he is aware may exist, "supports a finding of ineffective assistance of counsel," this finding alone

"will not be equated with a conclusion of ineffectiveness of counsel absent some positive demonstration that [the evidence] would have been helpful to the defense." *Commonwealth v. Bailey,* 322 Pa. Super. 249, 262, 469 A.2d 604, 611 (1983). Under *Pierce,* "a defendant is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it could have reasonably had an adverse effect on the outcome of the proceedings." *Commonwealth v. Howard,* 538 Pa. 86, 99, 645 A.2d 1300, 1307 (1994). (internal quotation marks omitted)

In these post-conviction proceedings, defendant has failed to produce any evidence which he contends his trial counsel failed to discover or use at trial which would have had a reasonable likelihood of affecting the outcome of the proceedings. Without knowing why Shiffert was involuntarily committed, what medications he was taking, why he experienced seizures, and what his mental capacity was, defendant has presented no evidence upon which to base a finding to a reasonable degree of probability that the absence of such information prejudiced defendant. Defendant asks us to speculate as to the significance and consequences of information which he claims was not obtained by trial counsel without himself producing the information or demonstrating how it would have made a difference at trial.

At the PCRA hearing, defendant testified that during the six- to seven-month period preceding trial, he was aware that Shiffert was taking prescription medication, although the types and reasons for the medication were unknown to him. Defendant further testified that on one occasion, within the three-month period leading to trial,

he recalled Shiffert taking some medication and then 20 to 25 minutes later experiencing a seizure. Defendant was also aware that Shiffert had been involuntarily hospitalized in a mental health institution, although he did not know the reason. Defendant also testified that Shiffert has difficulty with words, in speaking and writing, and that he has a limited capacity to comprehend what is going on. Finally, defendant testified that all of this information was communicated to Attorney Gazo and that Attorney Gazo advised defendant he would investigate.

When questioned by defendant's counsel at the PCRA hearing, Attorney Gazo admitted that defendant had told him that Shiffert took prescriptive medication and had been involuntarily committed. Attorney Gazo concluded that Shiffert had some mental health issues but that Shiffert's medical records would likely be privileged and protected from discovery. See 50 P.S. §7111. Nevertheless, at trial Attorney Gazo questioned Shiffert about the medications he was then taking, and Shiffert acknowledged that these medications clouded his thoughts somewhat. (N.T. 9/15/05, p. 107.) Attorney Gazo further asked Shiffert whether he had attempted suicide. The Commonwealth objected on the basis of relevancy and the objection was sustained. (N.T. 9/15/05, pp. 110-12.) Defendant has raised no claim of trial court error in this ruling. Cf. *Commonwealth v. Harris,* 578 Pa. 377, 385 n.10, 852 A.2d 1168, 1172 n.10 (2004) (noting that a claim of trial court error not included in a PCRA petition will not be considered by the court).

As to defendant's claim that Shiffert had cognitive difficulties, Attorney Gazo testified that Shiffert appeared

to understand and responded appropriately to questions asked of him at trial. Defendant has presented no evidence of a debilitating condition rendering Shiffert incompetent to testify. To the extent Shiffert's testimony exhibited any limitations, this goes to its weight, not its admissibility. Indeed, the trial record indicates that defendant himself had as much, if not more, difficulty in responding to questions and being coherent than did Shiffert.

To establish prejudice, defendant "must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different had counsel pursued the theory [he] now present[s]." *Daniels,* 600 Pa. at 30, 963 A.2d at 427. Defendant has not persuaded us that this is the case. Nor can counsel be deemed ineffective for failing to impeach a witness with evidence of a suicide attempt which the court has ruled is irrelevant. See *Harris,* 578 Pa. at 386, 852 A.2d at 1173 (finding that trial counsel is not ineffective for failing to impeach a witness with mental health information which the trial court has precluded from being introduced).[6]

---

6. At the PCRA hearing, defendant produced a copy of the application for Shiffert's involuntary commitment pursuant to section 302 of the Mental Health Procedures Act. The application, dated June 4, 2004, indicates that Shiffert was suicidal and was admitted on June 3, 2004, for involuntary emergency examination and treatment. The application indicates that Shiffert, who was then 23 years old, was distraught over breaking up with his girlfriend. There is nothing in this record to indicate that Shiffert's mental health issues somehow affected his ability to observe, comprehend or recall the drug transactions to which he testified. Cf. *Commonwealth v. Rizzuto,* 566 Pa. 40, 63-64, 777 A.2d 1069, 1082-83 (2001) (defining the critical question regarding the relevance of a witness' mental health history in terms of the witness' ability to observe and remember) (abrogated on other grounds).

Moreover, the thrust of the evidence defendant asserts should have been discovered, was primarily to challenge Shiffert's credibility with respect to his ability to accurately perceive, recall, and communicate what occurred at the time of each purchase. As to this objective, it cannot be forgotten that Shiffert's testimony was in fact consistent with that of two other Commonwealth witnesses, Theesfeld and Officer Biechy, both in a position to observe. Theesfeld was side by side with defendant for the first two buys; Biechy witnessed each buy from across the street. Consequently, the prejudice of which defendant complains appears harmless at most.

## CONCLUSION

In that defendant has not proven prejudice, defendant's claim of trial counsel's ineffectiveness fails and his petition for post-conviction relief will be denied.